**Warren G. WRIGHT, Appellant,**

v.

**BETHLEHEM MINERALS COMPANY,**
**a West Virginia Corporation, Appellee.**

Court of Appeals of Kentucky.

May 17, 1963.

Warren G. Wright, pro se.

Francis L. Rice, Pikeville, W. G. Stathers, Clarksburg, W. Va., for appellee.

STANLEY, Commissioner.

The case involves the interpretation of mineral deeds with respect to auger mining operations. The appeal is from a judgment permanently enjoining the surface owner, Warren G. Wright, from interfering in any way or manner with the mineral owner, Bethlehem Minerals Company, in the construction of roads and ways, facing up the coal and removing same by the auger mining method or interfering with its use of the surface "in any way incidental to such purposes."

We summarily dispose of the appellant's contentions of procedural irregulari-

ties in the granting of a restraining order and temporary injunction by which he, as defendant, was temporarily enjoined from interfering with the preparatory work for the mining operation. The appellant had a remedy by application to this court for an order directing its dissolution or modification. CR 65.07. See Slone v. Commonwealth, 225 Ky. 218, 7 S.W.2d 1037; Smith v. Smith, 304 Ky. 562, 201 S.W.2d 720. Likewise, as to the contention with respect to the absence of a reply to the defendant's counterclaim as constituting an admission of its allegations and pleading of relief. The depositions by which the case was tried treated the issues as having been raised, CR 15.02, except the allegations of damage, which must have been proved. CR 8.04(3). Nor is there any merit in the appellant's belated claim that the court was without jurisdiction.

The appellant admits the case is not one to prohibit auger mining, for the mineral deeds granted the right to mine the coal by any method. But he contends the restrictive clauses in the conveyances of the minerals prohibit the operations to which he objects. These are (1) excavations on the mountainside to provide a wide bench or ledge and a facing wall forty feet or so high, so as to "face up" and expose the outcrop of the coal seam for auger mining, and (2) the dumping of slate and any other debris or waste material onto the surface. It is also contended that the judgment ignores all rights reserved to the surface owner.

On June 26, 1891, appellant's predecessor in title conveyed to appellee's predecessor all coal and other minerals in a 353 acre tract of land, embracing about 100 acres here involved, with the customary rights to mine coal, including the right "to operate and construct all such wagon roads, railroads and tramways as may be necessary" etc. The coal that was capable of being mined by the conventional deep mining or tunnel method had been extracted when the then mineral owner, Consolidated Coal Company, obtained from the then surface owner of the property involved a second deed on March 16, 1939. The appellant, Warren G. Wright, and other owners of the surface joined in the deed and quit-claimed to the grantee "all their right, title, claim, interest and possession in and to the minerals, privileges and immunities hereinbefore described and granted." That deed recites as a "Whereas" that the coal company "desires to obtain greater mining rights and privileges in and pertaining to" the land described, "now, therefore, without detracting from any of the property or rights or privileges now held by" the company in the land, "but for the purpose of enlarging its mining rights and privileges in and touching" the land, and for a consideration, the grantors convey all the coal and other minerals and the right to mine and remove all of the minerals upon the land. Other described mining operational rights are extensive and explicit. While the deed does not mention auger mining or any other particular method, it grants the right "to enter in, upon and under said land and to mine, excavate and remove" all the coal "in any manner and by any method deemed either convenient or advisable" by the grantee. The particular provisions in this deed upon which the appellant strongly relies is as follows:

"Anything to the contrary herein notwithstanding, it is not intended by this deed to grant the right to erect any miner's dwellings or tipples on any of said three tracts of land; nor is it intended to grant by this deed the right to use any portion of the surface of said three tracts of land for the purpose of dumping slate thereon."

In excavating the bench or ledge necessary for placing the machinery and reaching the seam of coal to be extracted by rotary augering, the soil, rocks, bushes and other material were shoved over the edge and down the hillside. The appellant contends this act is using the surface "for the purpose of dumping slate thereon" and violates the particular exclusion stipulated

in the deed. He also contends that the excavation and leveling of the bench cannot be deemed a roadway or tramway, as authorized by the conveyances.

The first deed executed in 1891 is concise and general, and its terms indicate the use of the surface in mining operations was to be such as was customary at that time. Later, the development of different and more modern methods of mining seemed to require "greater rights and privileges," and the second conveyance, for that purpose, was executed when accessible coal had been extracted by tunnel mining. So, that deed granted those rights and privileges. As stated, appellant concedes that auger mining was comprehended. The method being pursued was shown to be proper, customary and reasonable.

If the specific terms of the first deed granting the right to operate and construct wagon roads and tramways should be limited and regarded as not including the creation of a bench or ledge, the second deed, by necessary implication, enlarged the right to use the surface so as to include it.

It appears that the material or debris thrown upon the surface, as described, is commonly called a "spoil bank." The appellant regards it as slate and the throwing of it upon the surface as being in violation of the particular express exclusion of the right "to use any portion of the surface for the purpose of dumping slate thereon." The word "slate" is defined as a fine grained rock, composed of clay, shales and other similar substances, having a characteristic cleavage. Webster's Dictionary. In coal mining parlance, it is the material containing rock, shale and unusable coal which lies immediately above the coal seam and which falls down when the coal is excavated. It appears to be flammable. There was nothing in the first and primary conveyance of the minerals that would prohibit the dumping of this product on the surface in deep or tunnel mining.

It is elementary law that conveyances, like other contracts, are to be interpreted as a whole and the meaning gathered from the entire context and not from particular clauses or words. Such clauses and words must be read in the light of that law and construed to harmonize with the whole and in a way that will be consistent with the general intent and purpose of the instrument.

When the deeds are considered and construed as a whole, we think the restriction or exclusionary clause should not and cannot be construed as depriving the appellee of the right to do what it was doing; hence, the judgment enjoining the appellant is proper.

We cannot agree with the appellant's argument that the judgment entirely destroys his property rights. The only provision in the judgment which might be deemed to justify the argument is that which enjoins the appellant from interfering with the appellee's use of the surface "in any way incidental to such purposes." According to the context, the word "incidental" may mean a casual or chance happening, not of prime importance, or may mean what is subordinate to the main event or act. Webster's Dictionary. The use of the term in the judgment should be regarded in the latter sense and as being the general surface rights of the owners of minerals as defined in many opinions of this court, and as provided in the conveyances.

The judgment is affirmed.